UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| JOSEPH COMBS, TDOC #317554, | ) | |
| *Petitioner.* | ) ) ) | |
| v. | ) ) | NO. 2:08-cv-120 |
| TOMMY MILLS, Warden, | ) ) | *Mattice* |
| *Respondent.* | ) | |

## **MEMORANDUM**

Joseph Combs (hereinafter "Combs" or "Petitioner"), who is now serving an effective 114-year sentence in a West Tennessee prison, has filed this *pro se* petition and amended petition for the writ of habeas corpus, 28 U.S.C. § 2254, challenging the constitutionality of his confinement pursuant to a state criminal judgment. Respondent has filed a motion to dismiss and for summary judgment and Petitioner has filed a response in opposition. [Docs. 12, 17]. Respondent has also filed the voluminous state court record in this case. [Docs. 14, Addenda 1-2]. For the following reasons, Respondent's motion to dismiss will be **DENIED**, but his motion for summary judgment will be **GRANTED**.

**I.  PROCEDURAL HISTORY**

In 2000, following a 31-day trial, Combs was convicted by a jury in the Criminal Court of Sullivan County, Tennessee on one count each of especially aggravated kidnapping, aggravated assault, aggravated perjury, aggravated rape, and seven counts of rape. Upon direct review, his appeal was consolidated with that of his co-defendant wife's. Ultimately, the Tennessee Court of Criminal Appeals reversed Petitioner's

aggravated perjury conviction, but affirmed his remaining convictions and sentences, and the Tennessee Supreme Court denied further review. *State v. Combs*, Nos. E2000-02801-CCA-R3-CD, E2000-02800-CCA-R3-CD, 2002 WL 31118329 (Tenn. Crim. App. Sept. 25, 2002), *permission to app. den.* (Tenn. Jan. 27, 2003). Petitioner also pursued post-conviction relief in the state courts, but this effort was also unsuccessful. *Combs v. State*, No. E2006-01241-CCA-R3-PC, 2007 WL 2141541 (Tenn. Crim. App. July, 26, 2007), *permission to app. den.* (Tenn. 2007). He now applies to this Court for a writ of habeas corpus, alleging four grounds for relief.

II. **FACTUAL BACKGROUND**

In 1977, Combs, a Baptist minister, and his wife, Evangeline, entered into an agreement to adopt the 5- or 6-month old victim, Esther Combs (nee baby Garcia), from the Baptist Children's Home in Valparaiso, Indiana. The Combs family moved from Indiana in 1986, apparently without finalizing the adoption. After living in Clearwater, Florida for several years, the Combs family, which now included six children, traveled around the country in a camper for a year and a half evangelizing. Finally, in 1989, they settled in Bristol, Tennessee, where petitioner became the minister at the Emanuel Baptist Church ["EBC"]. The family remained in the camper for a few months before moving to the building which housed the EBC gymnasium and fellowship hall.

On February 17, 1997, after sustaining years of physical and sexual abuse, Esther drank 24 ounces of antifreeze in a suicide attempt. Late the next morning, Esther was found on the floor in an apparent seizure. The paramedics were called and she was

-2-

rushed to the hospital for treatment. During her hospital stay, medical providers noticed that Esther's body was covered with scars [some 410 scars, according to a later count]. Law enforcement authorities were notified, and they began an investigation of Combs and his wife. The investigation culminated in the couple's indictment for numerous offenses—all involving their abuse of their putative adopted daughter, Esther.

Petitioner was charged with especially aggravated kidnapping (one count), aggravated assault (two counts), aggravated perjury (one count), aggravated rape (one count), and rape (seven counts). At the trial, Esther testified and detailed years of horrific physical and sexual abuse inflicted on her by her parents. The victim stated that Petitioner had told her that her "purpose in life" was to act as a "servant" to the Combs family. She averred that when she failed, in Combs' opinion, to perform her tasks properly, he punished her in various ways. More specifically, Esther testified that Combs had beaten her with a belt, a garden hose [while she was nude], a rope,[1] and a flip-flop sandal [on her abdomen]; kneed her in the stomach and tried to repeat the act but, because the first blow had doubled her over, caught her in the eye instead; and slammed her head repeatedly into a wall, leaving a hole in the wall. Also, from 1989 [when Esther was under the age of 13] until 1995, Petitioner forced her to perform oral sex on him. Esther had run away twice before but, both times, had been returned to the Combses and had been punished severely.

Witnesses for the prosecution described Esther as a frail, small, and sickly-looking child, who dressed in unrevealing, long, loose garments which covered her body.

---

[1] When Esther would not stop crying, Combs wrapped the rope around her neck and draped her over his shoulder. She passed out and awoke later on the floor.

Witnesses who had babysat for the Combs family in Florida variously testified that Esther's legs were very scarred, whereas the backs of the legs of another Combs daughter did not have a single mark on them; that Esther was treated differently from the other Combs children; and that, when the Combses asked the babysitter for a report of the children's behavior and were told that some child other than Esther had misbehaved, Esther would be punished instead or would be sent to "the office"[the area where spankings were administered]. One witness who had babysat the Combs children stated that she had taught Esther to write her name and the alphabet, but that when Esther excitedly displayed her achievement to the Combses, they appeared to be displeased and sent her to "the office."

Other prosecution witnesses—several of whom were EBC members—recounted that they had observed various injuries on Esther—her arm wrapped in gauze and encased in a sling, her eyes blackened, and wounds on her forehead. According to their testimony, Esther generally did not interact with others, as a family member always seemed to be nearby; did not make eye contact during conversation; worked while the other Combs children frolicked; took care of the youngest Combs child, Sarah; and served the other members of the family at social gatherings. There was also testimony as to the closeted living arrangements of the Combs family, with many witnesses testifying that they had never been invited into the residence and that, even when they stopped by to deliver food, they were not admitted into the residence, but either left the dish outside the door or handed it to a family member who briefly stepped out to receive it.

Witnesses for the defense included Petitioner and the Combs children other than Esther. According to Petitioner and the other Combses, Esther's clumsiness and repeated

falls caused the injuries. All family members testified that Esther had never been abused. Combs called some witnesses who had been his students at the Hyles Anderson Bible College in Indiana, where he had taught, or who had become acquainted with him there. They testified that the Combs' home had been "very normal," clean, and organized; that the Combs children had been quiet, well-mannered, neatly-dressed, normal, and happy; and that Esther in particular was "real sweet" and "quiet" with crooked front teeth and some scarring on her face, but no injuries or clumsiness, as far as they had observed. Some defense witnesses who had attended EBC stated that Esther was a thin, frail, well-behaved girl, smiling and happy, but not rebellious or clumsy, and some recounted that they had seen no scarring on Esther.

Combs' mother testified that she had no knowledge of any scars on Esther and that Esther "played too much" to be helpful. Mrs. Combs also added that on Father's Day of 1991 the Combs family stayed at her home from lunchtime until the 6:00 p.m. evening service at EBC and that on Thanksgiving Day, 1993, they had stayed all day, until 11:00 p.m. in the evening. Petitioner was charged with committing a rape on each of these days.

III. **DISCUSSION**

In his motion to dismiss, Respondent maintains that one ground in the petition has been procedurally defaulted because it was not properly presented to the state courts. In seeking summary judgment, Respondent asserts that the other ground was adjudicated in state courts and that, under the deferential review standards for state court decisions established in 28 U.S.C. § 2254, he is entitled to summary judgment as to this claim. This

is so, he maintains, because the resulting decision was not contrary to or an unreasonable application of well established federal law.

Petitioner objects to the motion, arguing that he raised and exhausted the challenged claim in the state courts and that it, therefore, was not procedurally defaulted. Petitioner also suggests that Respondent is not entitled to summary judgment because the adjudication of the other claims resulted in a decision that is contrary to clearly established legal principles in Supreme Court cases. Finally, Combs maintains that Respondent, in his motion, failed to address the final two claims offered in his pleadings and, thereby, has admitted the allegations in the claims. Thus, he asserts that he is entitled to relief on these two claims as well. The alleged procedurally defaulted claim will be addressed first.

**A. Ineffective Assistance of Counsel [Docs. 1 & 3, Ground two].**

In this claim, Petitioner charges that his attorney rendered ineffective assistance of counsel by failing to challenge the State's presentation of proof, which varied from the facts included in the presentment, thereby "extending his jeopardy." Petitioner also contends that the Tennessee courts failed to address this claim.

Respondent asserts a defense of procedural default, arguing that Petitioner did not present this claim in his brief to the state appellate court during post-conviction proceedings. Petitioner counters that he did present the claim in a *pro se* supplemental brief, but that the Tennessee Court of Criminal Appeals relied on a misinterpretation of state law and declined to consider it.

A state prisoner's petition for a writ of habeas corpus will not be granted unless it appears that the petitioner has exhausted his available state court remedies, or that there is an absence of available state corrective process, or that circumstances exist that render

such process ineffective to protect a petitioner's rights. 28 U.S.C. § 2254(b) (1). Exhaustion is accomplished, however, when the claim is appropriately presented, even if the state courts do not address it. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Harris v. Rees*, 794 F.2d 1168, 1173-74 (6th Cir. 1986)). Where a petitioner has actually presented his federal claim to the state courts but those courts have declined to address it due to his failure to meet a state procedural requirement, a procedural default occurs. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on appeal). A procedural default forecloses federal review, unless a petitioner can show either cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation, *Coleman,* 501 U.S. at 732, or that "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime". *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Carrier*, 477 U.S. at 496).

Respondent, though claiming procedural default, has failed to file the part of the state court record which supposedly supports his argument. While Respondent's "Notice of Filing of Documents" identifies the final document in Addenda 2 as "Brief of Joseph Combs," the actual contents of that submission is the State's brief. [Doc. 14]. Moreover, Combs' *pro se* supplemental brief allegedly offered during his post-conviction appeal has not been filed, much less any order of the state appellate court containing a ruling on the *pro se* filing or on the issues raised therein.

Accordingly, Respondent's motion to dismiss this claim will be **DENIED** at this time, but may be renewed upon his filing of the appropriate part of the post-conviction record to support his motion.

-7-

**B. Amended Presentment [Docs. 1 & 3, Ground two].**

Petitioner charges that, through "deletions and emendations" and over his objections, the trial court amended count one of the presentment, thereby broadening the charges beyond the limits which the grand jury had set. Petitioner also asserts that the presentment was constructively amended by the prosecution. Citing to *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), Mr. Combs now maintains that the alterations by the trial court and the prosecution caused him to be tried on charges not brought by the grand jury, in violation of his rights to due process of law and equal protection under the law.

**a) Improper Amendment [Trial Court]**: It must be noted at the outset that the provision in the Fifth Amendment which guarantees a federal criminal defendant an indictment or presentment by a Grand Jury does not apply to the states. *Branzburg v. Hayes*, 408 U.S. 665, 687-88 (1972). Furthermore, although the charging instrument in this case was actually a presentment—not an indictment—those designations will be used interchangeably in this Memorandum.

Count one of the presentment charged Mr. Combs with especially aggravated kidnapping, pursuant to Tenn. Code Ann. § 39-13-301, and alleged that "on or about November 16, 1989 to on or about October 1997," petitioner "did unlawfully, feloniously, and knowingly confine and terrorize another, to-wit: Esther A. Combs, born 11/16/77, so as to interfere substantially with the liberty of the said Esther A. Combs, said continuing confinement having been accomplished by the use or display of deadly weapons, resulting

-8-

in serious bodily injury to Esther A. Combs."² However, the time frame of the offense as stated in the presentment overlapped the applicability of two separate statutes—Tenn. Code Ann. § 39-13-301 [the one cited in the presentment] and Tenn. Code Ann. § 39-13-305.

Combs claims that trial court addressed the overlap by unconstitutionally altering the presentment. The commencement date of the offense was moved to April 30, 1990, so as to bring the charged criminal conduct within the scope of Tenn. Code Ann. § 39-13-305, which became effective on that date. The wording of the "bodily injury" element was changed from "to inflict serious bodily injury" to "where the victim suffers serious bodily injury"—a modification which Combs views as lessening the State's burden of proof because, under the latter language, the state only has to prove that such an injury occurred, not that an accused intended to inflict it.

When this claim was asserted on direct review, the Tennessee Court of Criminal Appeals first recited the contents of the presentment, noting that on the alleged commencement date of the offense, the crime of especially aggravated kidnapping did not yet exist, but that, on the last day of April, 1990 (some five and a half months after the offense began), a distinct offense of especially aggravated kidnapping was created and codified at Tenn. Code Ann. § 39-13-305. This offense is defined as false imprisonment [i.e., the knowing removal or confinement of another unlawfully so as to interfere

---

² The statute under which Combs was indicted, Tenn. Code. Ann. § 39-13-301, defines the offense of aggravated kidnapping as unlawfully removing or confining another, in relevant part: (3) To inflict serious bodily injury on or to terrorize the victim or another or (5) While armed with a deadly weapon. An "unlawful" removal or confinement occurs when force, threat, or deception is used, or if the victim is under 13 years old, without consent by a parent, guardian, or representative. Also voluntarily releasing the victim alive mitigates this Class A felony.

substantially with the other's liberty] which: (1) is committed with a deadly weapon; (2) is committed to hold the victim for ransom, reward or as a shield or hostage; (3) results in serious bodily injury to the victim or (4) involves a victim under 13 years of age. Kidnapping crimes are continuing offenses, *Combs v. State*, 2002 WL 31118329, *45 (Tenn. Crim. App. Sept. 25, 2002) (citing *State v. Legg*, 9 S.W.3d 111, 118 (Tenn. 1999)), but are mitigated by voluntarily releasing the victim alive.

The Court of Criminal Appeals also pointed out that Mr. Combs' overlap concerns were addressed in a pretrial hearing. After entertaining prosecution and defense arguments, comparing the statutes, and finding the language in the presentment and the two statutes to be concurrent, the trial court had adopted the State's proposed four-step resolution, by: 1) amending the commencement date of the offense so as to bring the alleged criminal conduct within the purview of the current statute; 2) deleting the phrase "to terrorize the victim"—a phrase omitted from the current statute; 3) deleting the victim's age at the time of the offense, an element in the current statute only; and 4) changing the cite reference to Tenn. Code Ann. § 39-13-305, to reflect the current statute. The case proceeded to trial on the altered presentment.[3]

The Court of Criminal Appeals then observed, with respect to the constitutional facet of the claim, that a charging instrument is required to provide sufficient information to enable the accused to know "the nature and cause of the accusation" he must answer.

---

[3] The trial court's order, filed February 7, 2000, stated its findings with respect to this matter as follows: The statutory language in the presentment and the two statutes involved is concurrent, in that they all describe a Class A felony; the amendment did not enlarge the time frame of the offense; the amendment deleted one aggravating circumstance, i.e., the age of the victim, from the presentment; and the language in the original presentment clearly described the offense of especially aggravated kidnapping. Accordingly, citing to a state criminal procedural rule, the lower court found that "no substantial right of the defendants would be prejudiced" by the amendment.

*Combs v. State*, 2002 WL 31118329, at*43 (citing U.S. Const. amend VI). In ruling on the state law aspect of the claim, the Court of Criminal Appeals found that the amendment did not effectively charge petitioner with an additional or different offense than that stated in the original presentment, that serious bodily injury is an element of both the former and the current statutes, and that serious bodily injury was alleged in the presentment. It further found, again referencing state law, that changing the date of the commencement of the offense in count 1 [from November 16, 1989 to April 30, 1990] was immaterial. Ultimately concluding that the allegations in the original presentment provided sufficient notice of the offense for which petitioner had to defend against and for which he was convicted, that the amendments did not mislead him as to the charge, and that they did not destroy any potential defense, the Court of Criminal Appeals declined to grant relief on the claim.

The standard which governs adjudicated claims such as this is found in 28 U.S.C. 2254(d). Under this standard, a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Also, a federal court should presume a state court's findings of fact are correct, unless a petitioner refutes them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To the extent that Petitioner's claim is founded on state law, it does not raise an issue under the United States Constitution and is not a cognizable habeas corpus claim. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (finding that federal habeas corpus relief

does not lie for errors of state law that do not rise to the level of a constitutional violation). Thus, a federal court may not issue a writ of habeas corpus based on a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37 (1984).

As to his federal claim, the Sixth Amendment to the United States Constitution secures to a criminal accused the fundamental right to be informed of the nature and cause of the accusations against him. U. S. Const. amend. VI; *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."); *Parr v. United States*, 363 U.S. 370, 394-95 (observing that "no man, however bad his behavior, may be convicted of a crime of which he was not charged, proven and found guilty in accordance with due process"). "[D]ue process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir 2006) (quoting *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir.1984)). And fair notice is given if "the offense [is] charged with precision and certainty so as to apprise the accused of the crime of which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial." *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).

However, "an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable on habeas corpus." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir 1986). (6th Cir. 2002) (citing *Mira,* 806 F.2d 639 ("The indictment here had sufficient information to provide petitioner with adequate notice and the opportunity to defend and protect himself against future prosecution for the same offense. Any other deficiencies in the indictment alleged by

-12-

petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding.")

The Tennessee Court of Criminal Appeals cited to the Sixth Amendment, which provides the relevant legal rule of "fair notice." Even though the state appellate court did not cite to a Supreme Court case, its decision is not contrary to the clearly established rule which governs this claim. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (To satisfy the "contrary to" component of § 2254(d), a state court need not cite to or even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."). Thus, the state court's ruling can be examined under the "unreasonable application" prong of § 2254(d), but must not be upset unless an independent review of the record and the relevant principles as established in Supreme Court cases persuades this Court that the ruling contravenes or unreasonably applies those principles or results from an unreasonable factual determination in light of the evidence offered to the state court. *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

The charging instrument in question clearly informed Mr. Combs of the nature of the accusations against him with such definiteness and certainty as to instruct him of the crime with which he was charged. The presentment charged Petitioner with the offense of especially aggravated kidnapping. The alleged victim was clearly identified as Esther Combs, his purported adopted daughter. The place where the crime allegedly occurred was specified [his residence], as was the time frame. True, the commencement date of the offense in the presentment was changed, but the completion date remained unchanged. Thus, the end result of the time-reduction was that there were fewer months

-13-

for which Mr. Combs was held answerable for his conduct and for which he had to prepare a defense—a change which, if anything, redounded to his benefit.[4]

As noted, a charging instrument will pass constitutional muster if it delineates the offense with sufficient precision so as to apprise the accused of the crime charged. *Koontz*, 731 F.2d at 369. Absent some kind of harmful effect to the defense from the lack of notice, prejudice will not be found. *Id.*, at 370. *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

The state court's decision (i.e., that the presentment adequately apprised Combs of the offense against which he had to defend and for which he was convicted, that the amendments did not mislead or prejudice him, and, implicitly, that he had been given the requisite "fair notice") must stand unless it is contrary to, or an unreasonable application of, the relevant Supreme Court precedent requiring "notice of the specific charge" or is based on unreasonable factual determinations. Because the state court decision was none of these things, Petitioner is not entitled to habeas corpus relief.

**b) Improper Amendment [Prosecution]**: Mr. Combs also asserts that, during the trial, the prosecution was allowed to proceed on different theories and facts from those alleged in the presentment. He maintains that one example of such conduct was that the State was permitted to offer evidence to show that Esther was under his "control," even though "control" *is not* an element of the offense, but was not required to adduce proof of

---

[4] In addressing Petitioner's presentment claim under state law, the state appellate court noted that the presentment as amended did not charge any different or additional offense, as the time-frame modification "only *reduced* the period of time Esther was confined while under thirteen years of age-it did not eliminate it. Nor did it change the fact that, after Esther turned thirteen, the alleged confinement continued for more than six years and ten months." *Combs*, 31118329, at *42 (emphasis in original).

-14-

"confinement," which *is* an element of the offense. Petitioner also asserts that nothing was introduced to show—indeed, the State denied—that the victim was "continuously" confined—another crucial aspect of the presentment. Petitioner's final assertion regarding the alleged disconnect between the proof and the presentment was that evidence was admitted to show that the crime was accomplished by fraud, instead of with a deadly weapon, as alleged in the charging instrument. The Court assumes that Petitioner is claiming that a variance occurred because the facts proved at trial deviated from the facts contained in the presentment.

An allegation concerning a variance in a charging instrument, however, is not a cognizable habeas corpus claim. *Roe*, 316 F.3d at 570 ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review.") (citing *Mira v. Marshall,* 806 F.2d 636, 639 (6th Cir.1986)). Moreover, whether a particular set of facts and circumstances constitutes the element of confinement or shows "continuous confinement" is a question for the finder of fact. And, as discussed previously, a federal court may not review a state court's interpretation of state law. *Estelle*, 502 U.S. at 67. Thus, if this is Mr. Combs' true claim, it cannot support the issuance of a writ of habeas corpus because he had "fair notice" of the charged offense.

Respondent's motion seeking summary judgment solely with respect to this claim will be **GRANTED** and the claim will be **DISMISSED**.

C. **Time-Barred Offenses; Insufficient Evidence [Doc. 5, Grounds 3 & 4].**

As Petitioner has noted, Respondent has not sought summary judgment with respect to Ground three in his [second] amended petition [Doc. 5], in which he claims that his prosecution on the sexual offenses were time-barred, or Ground four, in which he

charges that there was insufficient evidence to support his convictions.[5]  Mr. Combs asserts that, by virtue of Respondent's failure to address the allegations in these two claims in the dispositive motion, he has admitted them.

While such an assertion may or may not be true in general civil litigation, habeas corpus procedural rules and laws are different.  Under 28 U.S.C. § 2254(e)(1), facts found by a state court in adjudicating a claim are presumed correct, absent clear and convincing evidence to the contrary.  And the relief which may be granted on such a claim by this Court is cabined by the deferential standards of review in 28 U.S.C. § 2254(d).

Respondent has not explained, and the Court has no idea, why he failed to respond to the last two claims raised by Petitioner.   It is clear, nonetheless, that habeas corpus law does not permit relief to be granted based solely on Respondent's failing in this regard.

---

[5] Mr. Combs filed a § 2254 petition and, eight days later, an amended petition—both asserting Grounds one and two. [Docs 1, 3]. Pursuant to the Court's order, he thereafter completed and submitted a preprinted form petition for habeas corpus relief, adding Grounds three and four as claims for relief. [Doc. 5]. The latter pleading, though docketed as "amended petition," is technically a second amended petition.

-16-

Accordingly, because Respondent has not filed an answer or otherwise responded to the last two grounds for relief, he will be required, either:

1) to show cause as why he failed to respond to the last two claims in Mr. Combs' second amended petition; or

2) to file an answer or other appropriate response to those claims.

A separate Order will enter.

**ENTER**:

                                              */s/Harry S. Mattice, Jr.*
                                              HARRY S. MATTICE, JR.
                                              UNITED STATES DISTRICT JUDGE

-17-

Case 2:08-cv-00120-HSM-WBC   Document 20   Filed 09/25/09   Page 17 of 17   PageID #: 108