# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT GREENVILLE

| | | |
|---|---|---|
| JOSEPH COMBS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 2:08-cv-120 |
| v. | ) | Judge Mattice |
| | ) | |
| TOMMY MILLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

---

## SUPPLEMENTAL MEMORANDUM OF LAW IN
## SUPPORT OF RESPONDENT'S MOTION TO DISMISS

---

On 26 March 2008, the petitioner filed his petition for writ of habeas corpus in this Court and filed amended petitions on 24 April and 2 June 2008. (Docs. 1, 3 and 5.) On 2 July 2008, this Court ordered the respondent "to file an answer or other pleading[.]" (Doc. 6.) On 11 September 2008, the respondent filed a motion to dismiss and for summary judgment with supporting memorandum of law. (Docs. 12 and 13.) On 25 September 2009, this Court filed a memorandum in which the Court noted that the respondent had failed to properly file three particular documents from the state court record which would be necessary for proper consideration of arguments before this Court: (1) the appellate brief of the appellant, Joseph Combs, before the Tennessee Court of Criminal Appeals on the appeal of the denial of post-conviction relief; (2) the *pro se* supplemental brief filed by Mr. Combs in his post-conviction appeal; and (3) "any

order of the state appellate court containing a ruling on the *pro se* filing or on the issues raised therein."  (Doc. 20, p. 7.)

In it's order filed on 25 September 2009, this Court denied the respondent's motion to dismiss, granted the respondent's motion for summary judgment as to one claim, and ordered the respondent "to show cause why he failed to respond to the last two claims in Mr. Combs' Second Amended Petition" or otherwise respond to those claims.  (Doc. 21.)

The respondent has now filed a renewed motion to dismiss the petitioner's remaining claims.  This memorandum is offered in support of that motion.

## BACKGROUND

The petitioner was convicted by a jury of especially aggravated kidnapping, aggravated assault, aggravated perjury, aggravated rape, and seven counts of rape.  The victim of the alleged criminal acts was identified as Esther Combs, who had been in the petitioner's custody since she was four-and-a-half months old.  The Court of Criminal Appeals recited a factual background of the case, describing how the victim, Esther Combs, was found at the Emanuel Baptist Church in Bristol, Tennessee, after paramedics were summoned by the petitioner's family.  Esther, then nineteen years old, "was demonstrating 'seizure-like activity' and 'thrashing about," with her arms and legs waving" when paramedics found her.  *See State v. Combs*, E2000-02800-CCA-R3-CD, 2002 WL 31118329, *1 (Tenn. Crim. App. Sept. 25, 2002) (app. denied Jan. 27, 2003).

(Add. 3.) Paramedics who responded to the scene observed scars on Esther's back, hands, arms, chin and forehead, which they reported to medical personnel once they arrived at the hospital and to the deputy police chief when they returned to the fire station. One of the paramedics testified at trial that "during his seventeen years as a paramedic, he had never before observed that many scars on a single person." *Id.* at *2. (Add. 3.) Medical personnel performed a variety of tests to determine the cause of Esther's condition and treated her for ethylene glycol poisoning, which is caused by the ingestion of anti-freeze. Esther was examined "head to toe" to assess her physical condition. The examination revealed the following:

> Esther was responsive to tactile stimulation, ie., any type of touch would startle her. Old scars ran the length of her body, front and back, with the area of greatest concentration being the back and buttocks. The length of the scars varied and they appeared to be distributed horizontally. Many overlapped each other. None of the scars were recent, and the causative injuries appeared to have occurred at different times. In response to questions about the origins of Esther's scars, Evangeline Combs informed Dr. Stiefel that "Esther was a very clumsy child. She played rough. She fell a lot. And she was a very active child." Evangeline claimed that Esther had been born with clubbed feet, which contributed to her clumsiness. An examination of Esther's feet revealed "no clubbing," however. Dr. Stiefel also reported that Esther's teeth were in "horrible" condition. She had multiple dental caries (also known as "cavities"), a severe overbite, and clearly had received no dental care in recent years. Dr. Stiefel noted that, at approximately 90 pounds, Esther was emaciated and underweight for her height and build. She was also unable to fully extend her left arm, due to an injury of some kind. A pelvic examination revealed that her hymenal ring was intact with smooth borders – a finding she claimed was not inconsistent with penile penetration of her vagina.

*Id.* at *4. (Add. 3.)

3

At trial, Esther testified about her life with the Combs family.  She testified that she had five siblings and that she had been told by Joseph and Evangeline Combs that she had been adopted at the age of four-and-a-half months.  Joseph Combs was a pastor who traveled to various states evangelizing until the family settled in Bristol, Tennessee, where Combs became the pastor of Emanuel Baptist Church.  Esther testified of numerous abusive acts by Evangeline Combs toward her, which had been inflicted as punishment for various reasons.  She testified that on one occasion, Mrs. Combs forced Esther's hands into a pot of cooking oatmeal because she had disobediently stirred the pot when Mrs. Combs had stepped out of the room.  She testified of being intentionally cut with scissors and having her hand held to a red-hot stove burner.  She testified that "[t]he various marks on her chest and another on her left arm resulted from those occasions when Evangeline would twist and pull on Esther's skin with a pair of needle-nosed pliers until a chunk of flesh came off."  She testified that her front teeth had been knocked out after one of the other children "turned her in" for jumping on the bed.  As punishment, Evangeline picked her up by the arm and leg, swung her around and threw her into the wall, which resulted with four teeth being knocked out.  Instead of taking Esther to a doctor or dentist, Evangeline pushed the teeth back into Esther's mouth and they eventually reattached.   Esther testified of being forced to sleep naked in the basement in the winter, being tied to a high chair as a young child and thrown down stairs, and having her finger hammered repeatedly until it "busted open."  Further

4

testimony continued to describe heinous acts of cruelty by Mrs. Combs, to include various acts of cutting, burning and beating. *Id*. at *10-11. (Add. 3.)

Esther also testified of numerous acts of cruelty by Joseph Combs. She described one occasion when Mr. Combs "belted" her after discovering that a babysitter had taught her how to write her name. On another occasion, Combs laid Esther on her back and whipped her with a "flip-flop" sandal because "he heard something about a pink belly" and didn't stop the beating until Esther could remain perfectly still without crying. She described beating inflicted with a water hose for falling asleep in church, being kneed in the stomach for failing to complete a shopping list, being beaten with a rope and choked with the rope until she passed out for failing to finish her chores. She described Mr. Combs beating her with a baseball bat when he became angry with her. *Id*. at *12-13. (Add. 3.) Esther testified of eight specific occasions when Mr. Combs forced her to perform oral sex on him. The first was in April of 1989 when Esther was eleven years old. The next occasion was on her thirteenth birthday, 16 November 1990. The most recent rape she described was during the summer of 1995 when Esther was seventeen years old. *Id*. at *14-15. (Add. 3.)

## ARGUMENT

**I.   THE PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WAS NEVER PROPERLY PRESENTED FOR CONSIDERATION BY THE TENNESSEE COURT OF CRIMINAL APPEALS AND SHOULD BE DISMISSED AS PROCEDURALLY DEFAULTED.**

In his amended petition for a writ of habeas corpus, the petitioner claimed that "the Tennessee courts failed to address the question of whether the defense counsel was ineffective for failing to challenge the state as, during the trial proceedings, [it] altered the charges against Combs, extending his jeopardy." (Doc. 3, p. 2.) Counsel for the respondent previously argued that the petitioner failed to fairly present this claim to the state courts and that the claim was therefore procedurally defaulted. (Doc. 13, pp. 2-4.)

This claim does not appear among the issues raised in the petitioner's original petition for post-conviction relief filed with the Sullivan County Criminal Court in February of 2004. (Add. 4, pp. 1-11.) The claim did not appear in the petitioner's amended petition for post-conviction relief filed in July of 2004. (Add. 4, pp. 25-40.) In another amended petition filed in March of 2006, the petitioner claimed that "[t]rial counsel failed to base trial objections and appellate arguments on the unconstitutional broadening of grand jury's charges as set out in the presentment[.]" (Add. 4, p. 58.) The post-conviction court addressed this claim in its order denying relief:

> 14.  Petitioner says appellate counsel Richard Spivey and Tim Wilkerson were ineffective because they did not raise an issue concerning amendment of the presentment during the trial.

6

**Finding**:  This issue was addressed upon direct appeal.  In fact, the Criminal Court of Appeals devoted multiple pages to this issue in their opinion.  *State v. Combs*, (supra), pp.  26-28.

This issue was raised on direct appeal and the decision was adverse to the petitioner.  It cannot be raised again in the context of this post-conviction action.

(Add. 4, p. 75.)

Although it appears that the petitioner raised this issue unsuccessfully in the post-conviction court, the brief of the appellant submitted on the appeal of the denial of post-conviction relief, filed with the Tennessee Court of Criminal Appeals on 30 November 2006, raises only five issues for consideration by the Court.  (Add. 5, p. 3.)  The petitioner did not raise his claim that counsel was ineffective for failing to challenge the modification of the charges against the petitioner at trial.  On 28 December 2006, counsel for the appellant filed a "Motion to Allow Appellant to File Supplemental Brief."  (Add. 6.)  On 9 January 2007, the petitioner attempted to file a supplemental brief raising a claim that "[c]ounsel was ineffective for failing to challenge the constructive amendment and material variance that occurred in the charge of especially aggravated kidnapping."  (Add. 7, p. 1.)  On the following day, 8 January 2007, the petitioner filed a "Motion to Allow Appellant to File Supplemental Brief."  (Add. 8.)  In an order filed by the Court of Criminal Appeals on 9 July 2007, considered the various motions filed by the petitioner and his counsel and rejected them:

As noted, the petitioner is represented by counsel. Court records reflect that counsel timely filed a brief on behalf of the petitioner. The case has been docketed for consideration and is pending the decision of the panel to which it has been assigned. The court observes that a party may not proceed *pro se* in this court when he or she is represented by counsel. *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976); *State v. Cole*, 629 S.W.2d 915, 917 (Tenn. Crim. App. 1981). Accordingly, neither the motions filed *pro se* by the petitioner nor the similar motion filed by counsel on the petitioner's behalf are well taken. The petitioner is advised to direct any further inquiries or concerns regarding his appeal to his counsel of record.

(Add. 9.)

The petitioner's claim of ineffective assistance based on counsel's alleged failure to challenge the modification of the presentment at trial was not properly raised before the Court of Criminal Appeals. The claim is procedurally defaulted and should be dismissed.

## II. PETITIONER HAS PROCEDURALLY DEFAULTED HIS CLAIM RELATED TO THE TENNESSEE STATUTE OF LIMITATIONS.

The petitioner argues in his second amended petition that the charges of aggravated rape and the six counts of rape were time-barred under the limiting statute requiring that prosecution for such offenses occur within the four years following the offense or by the victim's eighteenth birthday. However, in his claim before the Tennessee Court of Criminal Appeals, the petitioner claimed only a violation of state law and did not implicate his rights under the Constitution of the United States. He claimed that the statute of limitations for the rape and aggravated rape charges had run in accordance with *state law*. (Add. 10, p. 154.) In his state appeal, the petitioner

8

asserted that "[a] conviction for a time-barred crime clearly violates the constitutional rights of an accused." (Add. 10, p. 158.) Without elaboration, the petitioner cited *Morgan v. State*, 847 S.W.2d 538, 543 (Tenn. Crim. App. 1992), where the Tennessee Court of Criminal Appeals cited only *state* law and *state* cases from various jurisdictions, suggesting that a person has a right under *state* law to be governed in accordance with the laws of the *state* as set forth by the legislature:

> A conviction for a time-barred crime clearly violates the constitutional rights of an accused. *State v. Seagraves,* 837 S.W.2d 615 (Tenn. Crim. App. 1992). In *Seagraves* our court held as follows:
>
>> When the General Assembly created time limitations on the prosecution of certain enumerated crimes, it declared that it would not prosecute an individual for the commission of these crimes after the expiration of the designated period. Tenn. Code Ann. § 40-2-101, *et. seq. See People v. McGee,* 1 Cal.2d 611, 36 P.2d 378, 379 (1934). Concomitantly, a substantive right was created which prevented the State from prosecuting citizens for an offense that is barred by the statute of limitations. *Spears v. State,* 26 Ala.App. 376, 160 So. 727, 728-729 (1935); *People v. Morgan,* 75 Cal.App.3d 32, 141 Cal.Rptr. 863, 866-867 (1977); *Tucker v. State,* 417 So.2d 1006, 1012 (Fla.Dist.Ct.App.1982); *State v. Stillwell,* 175 N.J.Super. 244, 418 A.2d 267, 270-271 (1980). This right creates an absolute bar to the prosecution of a criminal offense after the expiration of the period designated by the statute of limitations, *Stillwell,* 175 N.J.Super. 244, 418 A.2d at 271; and it deprives the court of subject-matter jurisdiction. *Spears v. State,* 160 So. at 728-729; *People v. Morgan,* 141 Cal.Rptr. at 866-867; *Tucker v. State,* 417 So.2d at 1012; *State v. Stillwell,* 418 A.2d at 271-272.

*Morgan v. State*, 847 S.W.2d 538, 543 (Tenn. Crim. App. 1992).

9

Under 28 U.S.C. § 2254(a), this Court may entertain the petitioner's claim "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Further, this Court may not grant relief "unless it appears that . . . the [petitioner] has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). The Court of Appeals for the Sixth Circuit has declared:

> A federal court will not address a habeas petitioner's constitutional claim unless the petitioner has first fairly presented the claim to the state courts. *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). Fair presentation of a federal constitutional issue to a state court requires that the issue be raised by direct citation to federal cases employing constitutional analysis or to state cases relying on constitutional analysis in cases with similar fact patterns. *Id.*

*Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

Here, the petitioner has not raised this claim as an issue under the United States Constitution in the state courts and the time has passed for doing so. The claim is now procedurally defaulted and should be dismissed.

**III.   THE DECISION OF THE TENNESSEE COURT OF CRIMINAL APPEALS DETERMINING THAT THE CHARGES OF RAPE AND AGGRAVATED RAPE WERE NOT TIME BARRED UNDER THE STATE STATUTE OF LIMITATIONS WAS BASED ON ADEQUATE GROUNDS OF STATE LAW INDEPENDENT FROM FEDERAL LAW.**

On appeal, the Tennessee Court of Criminal Appeals considered the petitioner's claim that the rape and aggravated rape charges were time-barred, but only in the context in which the issues were raised, under state law. The Court considered the dates of the alleged offenses and determined that of all the rape counts 13 through 19, only

Count 14 occurred within four years of the presentment against the petitioner. As to the remaining six counts, the Court of Criminal Appeals engaged in a careful analysis:

> As for the remaining rape convictions, the State does not dispute that more than four years had elapsed between the dates of the offenses and the filing of the presentment in this case (with the exception of count 14 as noted above). The record reflects that Defendant raised the issue whether the rape charges were time-barred prior to trial. Therefore, the issue presented here is whether the statute was effectively tolled for a sufficient period of time to allow lawful prosecution for these crimes.
>
> Tennessee Code Annotated section 40-2-103 provides that "[n]o period, *during which the party charged conceals the fact of the crime,* or during which the party charged was not usually and publicly resident within the state, is included in the period of limitation." (Emphasis added.) In *State v. Davidson,* 816 S.W.2d 316 (Tenn. 1991), the state alleged that the defendant's threats and coercion directed toward the child victim constituted concealment under the tolling provision. *Id.* at 318. On appeal, our supreme court considered the issue of what allegations of specific facts must be contained in the indictment or presentment to properly toll the applicable statute of limitations to render the prosecution timely where the indictment or presentment shows on its face that the statutory limitation period has since expired. *Id.* at 318. The presentment at issue in *Davidson* alleged that the defendant had concealed his criminal activities by discouraging the victim to tell anyone through use of threats and parental influence, which was additionally intimidating because the victim was particularly dependent on her family since she was legally blind. *See id.* In its conclusion, the court stated that it was unable to "read the language in the amendments to the presentments and say that for a certain period of time sufficient to render the presentments timely that the fact of the alleged crimes was concealed by the defendant." *Id.* at 321. Specifically, the court noted that the state failed to allege when the coercion occurred, when and if it ceased, when the alleged crimes were first reported to the authorities, or why the alleged victim did not report the abuse upon attaining the age of majority. *Id.*
>
> We must first determine whether the presentment contained sufficient allegations of specific facts to effectively toll the applicable statute of

limitations. In addition to alleging the specific facts which toll the statute, the state must prove the facts at trial or the accused cannot be convicted of the offense. *Id.* at 318; *Morgan v. State,* 847 S.W.2d 538, 542 (Tenn. Crim. App. 1992). Defendant Joseph Combs contends that the facts alleged by the State in the presentment concerning the rape offenses were inadequate to properly toll the statute of limitations under the strict requirements set forth for such purpose in *Davidson* and, further, that the State failed to prove the tolling facts at trial. We disagree.

The circumstances presented in *Davidson* are distinguishable from those presented in the case *sub judice.* The *Davidson* court noted that the state failed to allege when the coercion occurred. Here, the commencement of the concealment by confinement, as well as the date it terminated, was specified in the presentment. Count 1 alleged that Defendant *continually confined* the victim from April 30, 1990 until October 3, 1997. Counts 13 through 19 alleged that Defendant "did *conceal* the existence of the crime *by confining Esther A. Combs* within his residence." Under certain circumstances, it is proper that "all counts of a multiple-count indictment should be read as a whole, and elements missing from one count can be supplied by another." *State v. Cureton,* 38 S.W.3d 64, 82 (Tenn. 2000) (citation omitted) (where all of counts in an indictment referred to the same victim, set out the same date, and were related to each other, the court found they may be read together for purposes of providing notice to the defendant); *see State v. Youngblood,* 199 Tenn. 519, 287 S.W.2d 89, 91 (Tenn. 1956) ("different counts may, within themselves, not support an indictment but if they are properly connected with preceding counts then the two may be taken together and support an indictment"); *Hayes v. State,* 513 S.W.2d 144, 146 (Tenn. Crim. App. 1974) (where second count of an indictment charging drug possession stated only "the aforesaid controlled substance" and failed to specify the drug, the indictment was not defective). Although these cases concern the state's failure to completely allege all of the *elements* in an offense, we see no reason that the principle should not apply also to allegations concerning tolling facts under circumstances similar to those presented here.

The court in *Davidson* also expressed concern about the fact that the presentments did not reveal when the alleged crimes were first reported to the authorities, or why the alleged victim did not report the abuse upon attaining the age of majority. *Id.* at 321. In *Davidson,* the latest offense

12

charged allegedly occurred in June 1981. The presentments were returned in November 1987, more than six years after the most recent crime and approximately four years and five months after the alleged victim reached adulthood (which occurred in June 1983). In the case *sub judice,* the victim reached adulthood on November 16, 1995, *during* her unlawful confinement. The presentment was returned on November 4, 1998, one year and one day after her confinement terminated. These facts were not alleged in the presentment but, in contrast to *Davidson,* the period of time was not unreasonable or so lengthy as to raise logical suspicions about what could have caused such a delay. Consequently, information concerning exactly when the crimes were first reported to the authorities and why the victim did not report the crime at the age of majority was not necessary here.

We are mindful that statutes of limitations should be liberally construed in favor of the criminally accused, and provisions tolling the statute during periods of concealment are strictly construed against the state. *State v. Henry,* 834 S.W.2d 273, 276 (Tenn.1992). Even so, we conclude that the allegations contained in the presentment, as a whole, provided sufficient specific facts to properly plead concealment and thus toll the statute for the rape offenses for a sufficient period of time to render the presentments timely. Moreover, we find that the jury, by its verdict against Joseph Combs on the especially aggravated kidnapping charge, necessarily found beyond a reasonable doubt that the State proved at trial that Defendant concealed the fact of the rape crimes.

*State v. Joseph D. Combs*, 2002 WL 31118329 at *79-80. (Add. 3.)

The decision of the state court did not implicate federal law and was based entirely on state law, relying on the state interpretation of the statute of limitations, a creation of the state legislature under the state constitution. Therefore, the decision of the state court was properly based on an adequate and independent state law, being the state statute of limitations and state case law interpreting and applying the statute of limitations. Federal law is not implicated and the petitioner is not now entitled to relief.

13

**IV. THE COURT OF CRIMINAL APPEALS PROPERLY APPLIED FEDERAL LAW TO DETERMINE THAT THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO SUPPORT THE PETITIONER'S CONVICTIONS AND THAT DECISION WAS NOT CONTRARY TO AND DID NOT INVOLVE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AND WAS NOT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED.**

In his current petition before this Court, the petitioner claims "that there was insufficient evidence to sustain conviction as to the especially aggravated kidnapping and seven rape counts."  (Doc. 5, p. 6.)

### A.  Especially aggravated kidnapping

The petitioner argues that the charge of especially aggravated kidnapping was "based on proof of false imprisonment plus aggravating factors" and that the evidence did not support a finding that the victim was "continuously confined within his residence for over eight years."  (Doc. 5, p. 6.)

The Court of Criminal Appeals carefully summarized the testimonies of the various witnesses who appeared at trial and noted the following regarding the victim's testimony about "her life in general":

> With regard to her life in general, Esther testified that she had never been allowed to visit other children or go anywhere or do anything without Evangeline, Joseph, or one or more of her siblings present.  Moreover, no visitors were permitted inside the Combs residence at EBC.  Joseph told her that this was because their home was "a mess."  Esther recalled that various church members had come by at different times to deliver food, but they were either met at the door and not allowed in, or the Combs family would not answer the door at all and the visitor would eventually leave the food on the doorstep.  On the occasions that Esther was not allowed to

14

attend church services, she was ordered to stay in a small room near the men's bathroom. No one stood guard over her, but Evangeline placed powder in front of the door. Footprints in the powder would reveal any disobedience.

*State v. Joseph D. Combs*, 2002 WL 31118329 at *16. (Add. 3.)

The Court of Criminal Appeals cited *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) for the proposition that "[w]hen evidentiary sufficiency is questioned on appeal, the standard of review is whether, after considering all the evidence in the light most favorable to the State, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Joseph D. Combs*, 2002 WL 31118329 at *54. (Add. 3.) The Court then considered the evidence in light of the petitioner's claim regarding the insufficiency of evidence for the charge of especially aggravated kidnapping and found the claim without merit:

> To obtain a conviction for especially aggravated kidnapping, as relevant here, the State must prove: (1) the defendant knowingly removed or confined the victim unlawfully so as to interfere substantially with her liberty; and (2) the victim suffered serious bodily injury. *See* Tenn.Code Ann. §§ 39-13-305(a)(4), 39-13-302(a) (1997). "Serious bodily injury" means bodily injury that involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. *See id.* § 39-11-106(a)(34). With respect to removal or confinement, "unlawful" means "one which is accomplished by force, threat, or fraud, or, in the case of a person who is under the age of thirteen (13) or incompetent, accomplished without the consent of a parent, guardian or other person responsible for the general supervision of the minor's or incompetent's welfare." *Id.* § 39-13-301(2). The Defendants argue that the convictions cannot stand because the State failed to prove that the Defendants "confined" Esther or that any

15

confinement was "unlawful." According to the Defendants, the presentment alleged that they "continuously" confined Esther from April 30, 1990 through October 3, 1997. The Defendants point out that Esther ran away twice, but returned home of her own volition the second time, and that she also asked to return home after her stay in the hospital. The Defendants contend that, because these events "broke the continuity of any alleged unlawful confinement," an essential element of the kidnapping charge remains unproven.

In support of this argument, Defendants cite *State v. Paul Lee Whited,* No. M1998-00478-CCA-R3-CD, 1999 WL 1209786, Smith County, (Tenn. Crim. App., Nashville, Dec. 17, 1999) *no perm to app. filed.* In *Whited,* the proof showed that the defendant had unlawfully confined the victim by locking her in a closet on various occasions. The proof also revealed that the victim suffered serious bodily injury, but it failed to show that the victim sustained the injuries *during* the confinement. *Id.* at ----7. The State theorized (1) that the defendant unlawfully confined the victim for the entire six month period preceding her death by controlling her money, governing her food intake, and by cursing, beating, and humiliating her; and (2) that the victim sustained serious bodily injury during this time. A panel of this Court decided that, although the defendant's conduct toward the victim was cruel and despicable, the state had presented no proof that the defendant physically restrained the victim's freedom of movement for the entire six month period, or that the victim had felt "mentally restrained" by any force, threat, or fraud on the part of the defendant during that time. *Id.* at ----8. Although the proof of serious bodily injury was undeniable (in fact, the victim died as a result of injuries inflicted by the defendant), this Court modified the conviction from especially aggravated kidnapping to false imprisonment. *See id.* at ----9.

The circumstances in *Whited* are distinguishable from those presented in the case *sub judice.* As previously noted, the element of false imprisonment in *Whited* was proved by evidence that the defendant confined the victim by locking her in a closet. Here, the Defendants confined Esther by restraining her inside of a house for years, during which time she suffered serious bodily injury. In *Whited,* the victim was dead, and, thus, proof in the form of the victim's testimony could not be offered. In the case *sub judice,* the testimony of the victim gave the State an opportunity to prove confinement in a much broader sense than that presented in *Whited,* where

16

the state showed only that the victim was locked in a closet on one or more occasions.

In addition, the victim in *Whited* left the defendant's home (where the victim resided) on numerous occasions. Sometimes the defendant was home when she left, and other times he was not. Sometimes, the victim would be alone in the house for an entire day. Here, the proof indicated that Esther had no similar freedom of movement. Esther testified that she was restricted to her room on more than one occasion. The punishment for disobedience took the form of beatings and other torture, and Evangeline Combs placed powder outside of her door to ascertain whether she had obeyed. Esther testified that she had never been allowed to visit other children or go anywhere or do anything without Evangeline, Joseph, or a sibling present. No visitors were permitted inside the Combs residence when they lived at EBC. Esther further claimed that both Defendants had repeatedly informed her over the course of her life that her "purpose" was to be a servant in the Combs family. On those occasions when she did not perform this function properly, she was punished severely. In addition to not being able to read or write well, Esther did not possess a driver's license, a Social Security number, or any other standard form of identification. She was told by both Defendants that they had adopted her, an intentional misrepresentation of the facts on their part. Esther had been treated this way as far back as she could remember. Esther's testimony as to these facts was corroborated by the testimony of numerous other witnesses at trial.

From the evidence, taken in the light most favorable to the state, a jury could have reasonably inferred that Esther was confined by force, threat or fraud on the part of the Defendants. *See State v. Legg*, 9 S.W.3d 111, 118 (Tenn.1999) ("While the appellee argues that [the victim] had a number of opportunities to escape and was therefore not confined, this Court will not reweigh or reevaluate the evidence presented where the evidence is sufficient for conviction beyond a reasonable doubt."). The evidence indicates that Esther was not only psychologically and physically beaten into submission, she was also prevented from obtaining even the most rudimentary tools for living independently in society. Moreover, we reject the Defendants' argument that no confinement was proved because she escaped on three occasions and voluntarily returned twice. The evidence suggests that she believed she had no choice in this matter: her third

17

"escape" was the result of an attempt to commit suicide because she "couldn't take it anymore" and "wanted to die."

Defendants also argue that any confinement occurring prior to Esther's thirteenth birthday could not be "unlawful" because it was not accomplished without the consent of a parent, guardian or other person responsible for the general supervision of the minor's welfare, pursuant to the definition of "unlawful" provided in Tenn. Code Ann. § 39-13-301(2) (removal or confinement is unlawful when "accomplished by force, threat, or fraud, or, in the case of a person who is under the age of thirteen (13) or incompetent, accomplished without the consent of a parent, guardian or other person responsible for the general supervision of the minor's or incompetent's welfare"). In their briefs, the Defendants assert that they gave themselves consent to confine Esther, and, after she became thirteen years of age, their status as foster parents conferred upon them the right to continue to do so "since it is by force of law that all parents, guardians or other persons responsible for the general supervision of a minor's welfare are possessed of the power to confine them." Defendants cite no legal support for this proposition, and we find the argument without merit. As the record shows, any "legal" guardianship claimed by the Defendants is a travesty. They misrepresented their status as Esther's adoptive parents from the beginning of her life with them, and to believe that they did anything but detrimentally affect her welfare would go against a considerable weight of evidence to the contrary.

Moreover, as we discussed *supra* (in our analysis of the issue concerning amendment of the presentment), the disjunctive term "or" in the definition indicates that removal or confinement by force, threat or fraud may be unlawful, even if accomplished with the consent of a parent, guardian or other person entrusted with the minor's care. Esther turned thirteen years of age on November 16, 1990, which means that the period of confinement (alleged in the presentment) while under the age of thirteen lasted approximately six and one-half months and, after she turned thirteen, it continued for more than six years. The Defendants also maintain that the State failed to prove that Esther's confinement was accomplished through the use or display of a deadly weapon. This argument is also without merit, because the convictions in issue here are not based upon proof of this element.

18

The proof also supports the jury's finding that the victim suffered serious bodily injury during her confinement. *See* Tenn. Code Ann. §§ 39-13-305(a)(4). "Serious bodily injury" is defined as bodily injury that involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. *See id.* § 39-11-106(a)(34). According to Esther's testimony, among other things, she has been choked with a rope until she lost consciousness; she was burned, whipped, beaten with a baseball bat, cut, and sewn together without anesthesia; and her elbow has been permanently damaged. This is sufficient to prove that her injuries involved unconsciousness, extreme physical pain, protracted disfigurement, *and* substantial impairment of a bodily member. The Defendants argue that the State was required to elect which specific injuries caused the serious bodily injury in order to sustain a conviction. This is not true where the crime is viewed as a single, continuing course of conduct. *See State v. Adams,* 24 S.W.3d 289, 291 (Tenn. 2000) ("In cases where the nature of the charged offense is meant to punish a continuing course of conduct ... election of offenses is not required because the offense is, by definition, a single offense."); *Legg,* 9 S.W.3d at 118 (the offense of aggravated kidnapping punishes a continuing course of conduct).

In summation, after considering all the evidence in the light most favorable to the State, we believe that any rational trier of fact could have found that all the essential elements of this offense were proved beyond a reasonable doubt. Thus, we hold that the evidence is sufficient to support the convictions of both Defendants for the offense of especially aggravated kidnapping.

*State v. Joseph D. Combs*, 2002 WL 31118329 at *54-57. (Add. 3.)

Although there was evidence presented at trial which challenged the testimony of the victim, there was also testimony which corroborated the victim's testimony and the jury, as the trier of fact, was free to accredit the testimony of the victim and supporting evidence over evidence to the contrary. Viewed in the light most favorable to the

19

prosecution, the evidence was more than sufficient to support the jury's finding of guilt on this charge and the decision of the Court of Criminal Appeals was neither contrary to nor an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. The petitioner's claim is without merit and should be dismissed.

### B. Rape

The petitioner argues that the evidence was insufficient to support the petitioner's seven convictions of rape. (Doc. 5, p. 6.) He argues:

> In order to sustain a conviction for rape, force or coercion must be proved as an essential element of the offense. The State offered no proof of any particular force or coercion being used in any of the rape counts, relying instead upon the general force or coercion inherent in the alleged continuous unlawful confinement within the residence to satisfy the statutory requirement (as the Crim. App. Crt. found).

(Doc. 5, p. 8.)

The Tennessee Court of Criminal Appeals considered this claim and found it without merit:

> [C]ounts 13 through 19 alleged that Defendant "did unlawfully, feloniously, and by means of force or coercion sexually penetrate Esther A. Combs. . . ." As relevant here, "rape" is statutorily defined as the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim," and "[f]orce or coercion is used to accomplish the act." Tenn. Code Ann. § 39-13-503(a)(1) (1991 & 1997). "'Coercion' means threat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age." Tenn. Code Ann. § 39-13-501(1) (1997).

20

> We find the proof sufficient to sustain . . . the seven convictions for rape. . . . The earliest of the seven counts of rape was committed on November 16, 1990 and the most recent was alleged to have occurred during the summer months of 1995. Regarding proof of force or coercion as to the rape counts, we find the evidence clearly sufficient for any rational jury to find that Defendant similarly sexually penetrated Esther on the dates alleged and that, given the substantial proof of the Defendant's abusive treatment of her in general, she was acting under the threat of force or coercion to comply with Defendant's demands.

*State v. Joseph D. Combs*, 2002 WL 31118329 at *58. (Add. 3.)

The decision of the Tennessee Court of Criminal Appeals was well reasoned and in accordance with the directives of *Jackson v. Virginia*. The decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The petitioner is not entitled to relief and the claim should be dismissed.

21

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus should be dismissed.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General & Reporter

/s/Brent C. Cherry
BRENT C. CHERRY
Senior Counsel
Criminal Justice Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3486
B.P.R. No.  21992

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on this the 2nd day of December, 2009.  A copy of the document was forwarded on this same date, via United States Mail, first class postage prepaid, to the following person who is not registered with the Court's electronic filing system:

Joseph Combs, #317554
960 State Route 212
Tiptonville, TN 38079

/s/ Brent C. Cherry
BRENT C. CHERRY
Senior Counsel

22