UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| JOSEPH COMBS, TDOC #317554 | ) | |
| | ) | |
| v. | ) | NO. 2:08-CV-120 |
| | ) | *Mattice/Inman* |
| TOMMY MILLS, Warden | ) | |

## MEMORANDUM OPINION

### I. PROCEDURAL HISTORY

Joseph Combs ["Combs" or "petitioner"], who is now serving an effective 114-year sentence in a West Tennessee prison, has filed this *pro se* petition and amended petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging the constitutionality of his confinement pursuant to a state court judgment. [Docs. 1,3,5]. In 2000, Combs was convicted by a jury in the Criminal Court of Sullivan County, Tennessee for one count each of especially aggravated kidnapping, aggravated assault, aggravated perjury, aggravated rape, and seven counts of rape. The victim was Comb's adopted daughter Esther, upon whom, according to the proof at trial, Combs had inflicted years of physical and sexual abuse.

This matter came to the Sullivan County authorities' attention after Esther was hospitalized in a suicide attempt and the medical care providers noticed extensive scarring on her body. The aggravated perjury conviction was reversed on appeal, but the state

courts afforded petitioner no other relief, either on direct review or in his post-conviction proceedings.[1]

In his habeas corpus pleadings, Combs offered four grounds for relief, and, thereafter, respondent filed motions to dismiss and for summary judgment. The Court granted the summary judgment motion with respect to one claim (Illegally-Amended Presentment); denied the motion to dismiss with regard to one claim (Ineffective Assistance of Counsel); and directed respondent to show cause or to respond to two claims raised in petitioner's amended petition (Time-Barred Offenses and Insufficient Evidence), which were not addressed in respondent's motions.

Now before the Court are respondent's renewed motion to dismiss all claims remaining, his brief in support, and Combs' response to the renewed motion. [Docs. 26, 27, 29]. In respondent's motion, he argues that petitioner's claims of ineffective assistance and time-barred offenses have been procedurally defaulted—one due to Combs' failure to press it on appeal in the state courts and the other due to his failure to raise it as a federal constitutional matter. Respondent asserts that the insufficient evidence claim was adjudicated in state courts and that, under the deferential review standards for state court decisions in 28 U.S.C. § 2254, relief is not warranted with respect to this claim.

Petitioner counters that he did not procedurally default either claim and that the adjudication of his challenge to the sufficiency of the evidence resulted in a decision which was not only contrary to well established Supreme Court precedent but was also based on unreasonable factual determinations.

---

[1] A more detailed description of the facts and procedural history of this case is available in the Court's prior memorandum [Doc. 20] and need not be reiterated here.

For the following reasons, respondent's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**. The claims will be discussed individually.

II. **DISCUSSION**

A. **Ineffective Assistance of Counsel**

The Court, in its earlier memorandum and order, denied respondent's motion to dismiss on this claim, stating:

> Respondent, though claiming procedural default, has failed to file the part of the state court record which supposedly supports his argument. While respondent's "Notice of Filing of Documents" identifies the final document in Addenda 2 as "Brief of Joseph Combs," the actual contents of that submission is the State's brief. [Doc. 14]. Moreover, Combs' *pro se* supplemental brief allegedly offered during his post-conviction appeal has not been filed, much less any order of the state appellate court containing a ruling on the *pro se* filing or on the issues raised therein.
>
> Accordingly, respondent's motion to dismiss this claim will be **DENIED** at this time, but may be renewed upon his filing of the appropriate part of the post-conviction record to support his motion. [Doc. 21 at 7].

In respondent's renewed motion to dismiss this claim, he continues to assert procedural default and refers the Court to "additional addenda filed hereafter under a Second Notice of Filing Documents," specifically to Addenda 3 - 9. However, the docket sheets in this case show that respondent has filed no documents since he filed his renewed motion and brief and that the record which has been filed contains only Addenda 1 - 2. The record remains as it was when the Court denied respondent's prior motion. Without the proper support in the record, respondent's motion to dismiss this claim based on procedural default cannot be granted. It, accordingly, will be **DENIED** with respect to this claim.

### B. Time-Barred Offenses

Petitioner charges that the state prosecuted him for one count of aggravated rape and six counts of rape, though those offenses were barred by the statute of limitations. Combs asserts that, under the limitations statute, prosecutions on these offenses must occur within the four years next following the offense or by the victim's eighteenth birthday, whichever is later.

According to petitioner, the state alleged that the statute was tolled for the six rape counts that occurred outside this time, and that there was no limitation on the prosecution for aggravated rape because the authorized sentence was twenty years to life and because offenses punishable by a life term are not subject to a time bar. However, Combs' position is that he was prosecuted after the effective date of the Sentencing Reform Act of 1989 and that, under that Act, the sentence for aggravated rape is fifteen to twenty-five years. Moreover, so he claims, the trial court sentenced him under the Act, starting at the mid-point of the range (twenty years) and then enhancing his sentence to twenty-two years. Finally, it is his contention that a life sentence was prohibited at that time.

As concerns the six counts of rape, petitioner alleges that, contrary to the state's allegation and the state courts' finding, the statute of limitations for these offenses was not tolled while he "covered his crimes by unlawfully confining the victim to his residence for the entire specified period," because there is no evidence that the victim was so restrained. In fact, or so Combs claims, the victim did not assert that she was restrained, the state disavowed the allegation, and the state's own proof showed that she was not so restrained.

Petitioner claims that his convictions on these sexual offenses violate his right to equal protection, due process, and his right to a fair trial as secured to him by the Sixth Amendment. Respondent asserts a procedural default defense, bottomed on petitioner's alleged failure to raise his time-barred claims under a federal constitutional theory and by his choosing, instead, to present them solely as violations of state law.

A petition for federal habeas corpus relief may not be considered unless a petitioner has first exhausted all available state court remedies as to each claim presented in the petition. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Exhaustion "generally entails fairly presenting the legal and factual substance of every claim." *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987), The legal basis of the habeas claim must be the same as, or the "substantial equivalent" of, that presented to state courts. *Picard v. Connor*, 404 U.S. 270, 278 (1971). Moreover, a petitioner must present the claim in state court as a matter of federal law. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982); *see also Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (holding that "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief") (citing *Picard*, 404 U.S. at 271).

Combs maintains that he relies on a foundation of decisional law as determined by the United States Supreme Court because, in his brief, he cited to *Toussie v. United States*, 397 U.S. 112, 114-15 (1970), and to *State v. Henry*, 834 S.W.2d 273, 276 (Tenn. 1992), a case which, in turn, cited to *United States v. Marion*, 404 U.S. 307, 309 n.14

(1971).² The Court infers that this response is an assertion that Combs, indeed, offered his claim to the state courts as a federal law violation and that this not only constitutes a fair presentation of the claim, but also serves to exhaust it.

A petitioner satisfies the fair presentation requirement by relying on federal decisions employing constitutional analysis; by relying on state decisions employing federal constitutional analysis; by phrasing his claim in terms of constitutional law or in terms so particular as to call to mind a specific constitutional right; or by alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000).

Combs did none of these things. The issue, raised as Claim 6 in petitioner's brief on direct appeal, was "[w]hether the trial court committed reversible error by not dismissing [the] aggravated rape charge and all but one of the rape charges because same were barred by the applicable statute of limitations." [Doc. 14, Addendum 1, Brf. of Joseph Combs at 3.] In the body of his discussion, Combs argued that the state's statute of limitations for those offenses had expired and had not been tolled, as the State alleged, by continuously confining the victim within the Combs' residence or otherwise concealing the crimes. [*Id.* at 155]. He then argued that "[a] conviction for a time-barred crime clearly violates the constitutional rights of an accused," a direct quotation from *Morgan v. State*, 847 S.W.2d 538 (Tenn. Crim. App. 1992).

However, the *Morgan* court credited that principle to another state court case, *State v. Seagraves*, 837 S.W.2d 615 (Tenn. Crim. App. 1992). *Seagraves* itself cites only to

---

² The Court has supplied the proper citation of the latter case, which Combs' brief incorrectly cited as *United States v. Marion*, 494 U.S. 307, 309 n. 14. [Doc. 14, Addendum 1, Brf. of Joseph Combs at 155.]

Tennessee law and to cases from other states, thereby making it clear that the matter under discussion involves only state law. Furthermore, petitioner's citation to *Toussie v. United States* does not call for any different conclusion because that case involved no federal constitutional issue, but instead whether a statute of limitations had expired on a federal criminal offense, an offense of a different sovereign altogether.

True, petitioner relied on *State v. Henry*, 834 S.W.2d 273, 276 (Tenn. 1992) which, in turn, cited to a footnote in *United States v. Marion*, but all that footnote does is to explain how federal criminal statutes of limitation are to be interpreted ("in favor of repose"). Granted, in *Marion*, the Supreme Court discussed speedy trial rights under the Sixth Amendment, but the Court held that those rights are triggered by delay *after* indictment or presentment, not before. Combs' allegation, if anything, speaks more to pre-presentment delay; he did not make a speedy trial argument in state court and does not make one here either. Thus, *Marion*, likewise, is no help to him.

The state court, presented with the alleged violation of state law, understandably limited its analysis to the application of state law. Where a petitioner has never before raised a claim as a matter of federal law and where state law bars the claim in state courts, the claim is treated as technically exhausted (since no available state remedies are left to exhaust), but procedurally barred. *Coleman*, 501 U.S. at 732. A claim which has been procedurally defaulted in state court will only be reviewed by a habeas court if a petitioner shows cause and prejudice, *id.*, at 750, or demonstrates that a miscarriage of justice will ensue if his claim is not reviewed. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Combs did not present his due process claim to the state court when he had the opportunity and cannot do so now. He offers nothing by way of cause and prejudice and, thus, habeas review of his claim is barred by his state procedural default.

However, even if the claim were not procedurally barred, Combs has established no constitutional violation. Though the Sixth Amendment is not implicated in a pre-indictment or pre-arrest scenario, "the Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). "A successful Due Process claim for pre-indictment delay requires that a defendant establish: (1) prejudice to his right to a fair trial, and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." *United States v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003) (citations omitted).

Petitioner has offered no facts to sustain a conclusion that he was denied a fair trial, that he suffered any prejudice as a result of a delay (if there was one), or that a delay was intentional on the part of the prosecution to gain a tactical advantage. Indeed, the trial court found that Combs had concealed the offense by confining the victim continuously in the residence and, though petitioner disputes that there was proof that this was so, such a reason would certainly cut against a finding that the delay was intentional and part of a strategic plan on the prosecution's part. At any rate, plaintiff has pointed to nothing showing either prejudice or intentional delay. *See Payne v. Rees*, 738 F.2d 118 (6th Cir. 1984) (finding no due process violation where state prisoner failed to make an initial showing of actual prejudice involving a six-year delay between the date of the offenses and the indictment and made no effort to show the prosecution gained a tactical advantage by

such delay).  The writ will not issue with respect to this claim and respondent's motion to dismiss this claim will be **GRANTED**.

C. **Insufficient Evidence**

Combs asserts, in his last claim, that the evidence was not sufficient to support his convictions for especially aggravated kidnapping and rape. Combs contends that continuous confinement and force/coercion were respective elements of these crimes, that there was not proof beyond a reasonable doubt of every fact necessary (read, element) to constitute the crimes with which he was charged, and that the evidence, therefore, was insufficient to convict him.

1. *Standards of Review*

A state criminal defendant may obtain federal habeas relief if he can demonstrate that he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case

differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies that principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

Findings of fact which are sustained by the record are entitled to a presumption of correctness, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The "highly deferential standard" dictated in § 2254(d) mandates that state courts' decisions "be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455 (2005) (citations omitted).

A habeas court must apply two levels of deference when insufficient evidence is claimed. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson v. Virginia*, 443 U.S. 307 (1979), deference is owed to the factfinder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Under the AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Id.*

### 2. *Especially Aggravated Kidnapping Conviction*

The presentment charged Combs with aggravated kidnapping under Tenn. Code Ann. § 39-13-301, which defines the offense as (1) unlawfully removing or confining

another, in relevant part: (2) to inflict serious bodily injury on or to terrorize the victim or (3) while armed with a deadly weapon. An "unlawful" removal or confinement occurs when force, threat, or deception is used. The charging instrument also alleged that the victim's confinement was continuous, spanning from November 16, 1989 to sometime in October 1997. However, because the time of the offense stated in the presentment overlapped two separate statutes—Tenn. Code Ann. § 39-13-301 [the one cited in the presentment] and Tenn. Code Ann. § 39-13-305, the commencement date of the offense was moved to April 30, 1990 (the effective date of the new statute) to bring the charged criminal conduct within the scope of Tenn. Code Ann. § 39-13-305.

Petitioner's challenge to this conviction rests on his contention that the victim was not continuously confined to the residence as charged. Petitioner claims that the victim was not so confined, but rather was carefully watched (a point which the Court of Criminal Appeals conceded, so claims Combs). Combs also points out that various witnesses signed statements and gave testimony supporting that the victim had attended youth services, Sunday school classes, and had been observed away from the residence on many occasions, even staying overnight in Virginia. Finally, Combs indicates that the victim herself testified that she had gone to her grandmother's house by herself and chatted on the porch with her many times. Thus, petitioner presumably is claiming, as he did in state court, that "these events 'broke the continuity of any alleged unlawful confinement [and that] an essential element of the kidnapping charge remains unproven." *State v. Combs*, 2002 WL 31118329, at *55 (Tenn. Crim. App. Sept. 25, 2002), *perm. to app. den.*, (Tenn. 2003).

The rule which applies to a claim of insufficient evidence, as the state court correctly noted when presented with this claim, was announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Gall v. Parker,* 231 F.3d 265, 287-88 (6th Cir. 2000). *Jackson* holds that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. The petitioner claims that the state court decision was contrary to the relevant Supreme Court precedent, but since the state court correctly identified *Jackson* as the source of the controlling legal rule and applied that rule, it was not contrary to that precedent. *Combs*, 2002 WL 31118329, at *54.

Petitioner next claims that the state court reached its decision based on an unreasonable determination of the facts before it. 28 U.S.C. § 2244(d)(2). In reviewing the merits of this claim, the Tennessee Court of Criminal Appeals outlined the proof in the record:

> [Petitioner] confined Esther by restraining her inside of a house for years, during which time she suffered serious bodily injury. In *Whited,*[3] the victim was dead, and, thus, proof in the form of the victim's testimony could not be offered. In the case *sub judice,* the testimony of the victim gave the State an opportunity to prove confinement in a much broader sense than that presented in *Whited,* where the state showed only that the victim was locked in a closet on one or more occasions.

---

[3] In support of his claim in state court, Combs cited to *State v. Whited,* No. M1998-00478-CCA-R3-CD, 1999 WL 1209786 (Tenn. Crim. App. Dec. 17, 1999), where a conviction for especially aggravated kidnapping had been modified to false imprisonment because the proof showed that the defendant had unlawfully confined the victim by locking her in a closet on various occasions, but did not show that he physically restrained the victim's freedom of movement for the entire six month period, or that the victim had felt "mentally restrained" by any force, threat, or fraud on the part of the defendant during that time.

In addition, the victim in *Whited* left the defendant's home (where the victim resided) on numerous occasions. Sometimes the defendant was home when she left, and other times he was not. Sometimes, the victim would be alone in the house for an entire day. Here, the proof indicated that Esther had no similar freedom of movement. Esther testified that she was restricted to her room on more than one occasion. The punishment for disobedience took the form of beatings and other torture, and [petitioner's co-defendant wife] placed powder outside of her door to ascertain whether she had obeyed. Esther testified that she had never been allowed to visit other children or go anywhere or do anything without [petitioner or his wife] or a sibling present. No visitors were permitted inside the Combs residence when they lived at E[benezer] B[aptist] C[hurch]. Esther further claimed that [petitioner] had repeatedly informed her over the course of her life that her "purpose" was to be a servant in the Combs family. On those occasions when she did not perform this function properly, she was punished severely. In addition to not being able to read or write well, Esther did not possess a driver's license, a Social Security number, or any other standard form of identification. She was told by [petitioner] that [he and his wife] had adopted her, an intentional misrepresentation of the facts on their part. Esther had been treated this way as far back as she could remember. Esther's testimony as to these facts was corroborated by the testimony of numerous other witnesses at trial.

From the evidence, taken in the light most favorable to the state, a jury could have reasonably inferred that Esther was confined by force, threat or fraud on the part of the Defendants. *See State v. Legg,* 9 S.W.3d 111, 118 (Tenn.1999) ("While the appellee argues that [the victim] had a number of opportunities to escape and was therefore not confined, this Court will not reweigh or reevaluate the evidence presented where the evidence is sufficient for conviction beyond a reasonable doubt."). The evidence indicates that Esther was not only psychologically and physically beaten into submission, she was also prevented from obtaining even the most rudimentary tools for living independently in society. Moreover, we reject [petitioner's] argument that no confinement was proved because she escaped on three occasions and voluntarily returned twice. The evidence suggests that she believed she had no choice in this matter: her third "escape" was the result of an attempt to commit suicide because she "couldn't take it anymore" and "wanted to die."

*Combs*, 2002 WL 31118329, at *55-56. The Court of Criminal Appeals thereafter concluded that the evidence was sufficient to support Combs' especially aggravated kidnapping conviction.

The victim's restriction to the Combs' residence for years and the force and coercion involved in that confinement were matters testified to by the victim and other witnesses. Of course, petitioner presented witnesses to show that the victim was not so restricted, forced, or coerced. Insofar as the Court can discern, this issue primarily involves two competing versions of the circumstances surrounding the victim's confinement and the jury's obvious acceptance of the version offered by the victim, as bolstered by the testimony of others. A jury is free to choose which version of a contested issue is true. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

In view of all the proof in the record of confinement in a "broader sense" and because this issue rests in large part on credibility, the state court's resolution of this claim was neither an unreasonable application of the *Jackson* standard nor based on an unreasonable determination of the facts.

### 3. *Rape Convictions*

Combs complains that the state offered no proof of any particular force or coercion being used in any of the rape counts, but relied instead upon the general force or coercion inherent in the alleged continuous unlawful confinement within the residence. Combs also maintains that the victim gave a statement in a taped interview that no threats or force was used to "make [her] do it," but that he became aware of and understood the significance of the statement only when he received the complete state court record in response to his federal habeas corpus petition. [Doc. 29, Pet'r's Reply to Resp't's Renewed Mot. to Dismiss at 21]. Furthermore, Combs argues that, while there was proof of several acts of abuse, he was charged only with one of those acts and that no witness gave any testimony

about the alleged rapes. According to Combs, force or coercion must be proved as an essential element of rape; the state disavowed the use of force or coercion; therefore, his conviction rests on insufficient proof and entitles him to the writ.

In reviewing this issue, the Court of Criminal Appeals recited that the presentment alleged, in counts 13 through 19, that Combs "did unlawfully, feloniously, and by means of force or coercion sexually penetrate [the victim]." *Combs*, 2002 WL 31118329, at *58. The state court then cited Tenn. Code Ann. § 39-13-503(a)(1) (1991 & 1997), for its statutory definition of "rape" as being the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim," with "[f]orce or coercion [being] used to accomplish the act." *Id.* The state court continued to define the statutory terms by stating that, under Tenn. Code Ann. § 39-13-501(1) (1997), "[c]oercion means threat of kidnapping, extortion, force or violence to be performed immediately or in the future. . . ." *Ibid.*

Applying these definitions of the elements to the record facts, the state court concluded that the evidence was "clearly sufficient for any rational jury to find that [petitioner] . . . sexually penetrated [the victim] on the dates alleged and that, given the substantial proof of [petitioner's] abusive treatment of her in general, she was acting under the threat of force or coercion to comply with petitioner's demands." *Id.* Ruling that the rape convictions were sustained by sufficient evidence, the state appellate court likewise rejected Comb's second challenge to the evidentiary sufficiency.

A district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Though, again, Combs argues that the state court decision is contrary to clearly established federal law, *Jackson* was the bedrock legal rule cited by the state court in his analysis of the claim. Hence, as discussed previously, the state court decision was not contrary to Supreme Court precedent.

In view of all the proof in the record detailing the general abuse inflicted on the victim, the evidence indicating that petitioner sexually penetrated her, and the double deference to which the state court decision is entitled, the state court's resolution of this claim was not an unreasonable application of the *Jackson* standard nor was it based on an unreasonable determination of the facts. Since the petitioner's second claim of insufficiency of the evidence does not pass either of  § 2254(d)'s tests, respondent's motion to dismiss will be **GRANTED**.

### III. CONCLUSION

For the reasons discussed above, respondent's motion to dismiss will be **DENIED IN PART** as to Claim One and **GRANTED IN PART** as to Claims Two and Three.

A separate order will enter.

**ENTER**:

*s/Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE